UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

QUINN JOHNSON,

                    Plaintiff,

          v.                                    Case No. 03-C-0764

SHARON WILLIAMS, and
MATTHEW FRANKS,

                    Defendants.

ORDER

The plaintiff, Quinn Johnson, who is incarcerated at Oakhill Correctional

Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The

plaintiff was permitted to proceed on a claim that the alleged application to him

of a rule prohibiting parole for drug offenders violates the Constitution's

prohibition on *ex post facto* laws. (October 10, 2003 Order). The plaintiff was also

permitted to proceed on claims that the defendants denied him of due process by

denying him parole based on allegedly false information and by denying his

request for reconsideration after the plaintiff received a sentence credit.  *Id.*

Although the plaintiff was not specifically permitted to proceed on an equal

protection claim, *see id.*, the court will address the parties' arguments concerning

the plaintiff's allegation that he was treated differently than non-drug offenders

under the new parole rule based on his conviction on drug offenses. (Complaint ¶ 14).

In his complaint, the plaintiff requested a preliminary injunction, a request which the defendants oppose. This order addresses that request. Additionally, this order addresses the plaintiff's discovery related motions, request for an extension, supplemental pleadings, and the defendants' motion for summary judgment.[1]

## FACTUAL BACKGROUND

Though it is unsworn, for the purposes of this motion, the defendants recite facts from the complaint including its 13 pages of exhibits. (Defendants' Motion for Summary Judgment at 2-6). In addition, the facts are taken from the affidavit of Karla Z. Keckhaver and exhibits thereto.

The complaint identifies the defendants and their positions at the times relevant to this action as Sharon Williams, Commissioner of the Wisconsin Parole Board, and Matthew Franks, Secretary of the Wisconsin Department of Corrections. (Complaint at 2-3). The plaintiff claims that in violation of the Constitution, the defendants deprived him of his due process and equal protection rights, and applied an *ex post facto* law to him. *Id.* at 6-7.

---

[1] The defendants' motion was originally filed as a motion to dismiss, and was converted by the court. (September 16, 2004 Order).

On November 18, 1991, the plaintiff was convicted by a Brown County Circuit Court of possession with intent to deliver cocaine and was sentenced to 15 years imprisonment. *Id.* at ¶ 1. The conviction was "reversed" in February 1993. *Id.* On June 28, 1994, following a second trial, the plaintiff was again convicted and was sentenced to 22 years imprisonment, to be served consecutively with a 13 year sentence for a parole violation. *Id.* The plaintiff was not given a "sentence credit" for the time he served following the first conviction. *Id.* Without a sentence credit, the plaintiff's "maximum release date" was set at January 29, 2012, and his "parole eligibility date" was set at February 12, 2000. *Id.*

The plaintiff participated by telephone in his February 8, 2000, parole hearing conducted by a parole commissioner other than defendant parole commissioner Sharon Williams. *Id.* at ¶ 2, Ex. B. "The parole commissioner" found that the plaintiff had "satisfactory Institutional Conduct, satisfactory participation in recommended programs, and a workable parole plan." *Id.* at ¶ 2.

However, "the Commissioner" found that the plaintiff "had not served [a] sufficient amount of time in custody and that he posed an unreasonable risk to the community." *Id.* With respect to the sufficiency of the time served, the commissioner noted that it was the plaintiff's "5TH INCARCERATION P.V. (MULTIPLE ARMED ROBBERIES) NEW DRUG OFFENSE." *Id.* at ¶ 2, Ex. B.

With respect to the risk posed by the plaintiff, the commissioner found the plaintiff had "REOFFENDED WITH DRUG DEALING WITHIN A FEW MONTHS FROM HIS LAST RELEASE FROM PRISON" and that he was "DIFFICULT TO RELEASE GIVEN HIS ATROCIOUS CRIMINAL HISTORY." *Id.*

The commissioner recommended denying parole and deferring reconsideration for 48 months. *Id.* at ¶ 3. The plaintiff alleges that the commissioner based her determination on the fact that the plaintiff "was released on discretionary parole and was revoked within that same month of 1998." *Id.* at ¶ 2. The plaintiff states that this information is incorrect; he has "never been released on this sentence to a discretionary parole, then revoked." *Id.* The plaintiff also alleges that the commissioner based the denial of parole on a letter from the Milwaukee Police Department (MPD) in the plaintiff's file. *Id.* The letter dated November 29, 1999, urges that the plaintiff should remain in prison until the time of his mandatory release date because he poses a risk to the community. *Id.* at ¶ 2, Ex. B-1. The plaintiff states that the MPD letter concerns a sentence on which he reached his mandatory release date in 1998. *Id.* at ¶ 2. On February 8, 2000, then Chairman Jerry Smith adopted the commissioner's recommendations. *Id.* at ¶ 3.

On June 26, 2000, Brown County Circuit Judge William M. Atkinson ordered that the plaintiff be credited with the time he served between May 29, 1991, and June 29, 1994. *Id.* at ¶ 4, Ex. C. The plaintiff was credited with three years and one month, and on the basis of the credit his mandatory release date was recalculated to be December 14, 1998. *Id.* at 4, Ex. D.

Based on the allegedly erroneous information relied upon by the commissioner, and based upon his recalculated mandatory release date, the plaintiff submitted "a request for reconsideration of parole or a 'new parole' hearing" on April 21, 2001. *Id.* at ¶ 5, Ex. E. On May 3, 2001, Ms. Bethany Vande Kolk, a Contract Monitoring Unit Records Assistant, informed the plaintiff that the information he provided was "noted and discussed" with the parole commissioner and that the prior decision to defer reconsideration for 48 months would stand. *Id.* at ¶ 6, Ex. F. Ms. Vande Kolk noted that the deferral and the parole eligibility date were reasonable based on the plaintiff's mandatory release date of December 14, 2008. *Id.*

The plaintiff further alleges that:

[i]n 1997, the Secretary of the Wisconsin Department of Correction[s] . . . issued a 'new rule' directing the parole commission not to grant early parole to any and all drug offenders and that they will be required to serve the entire mandatory maximum release date of their sentence.

*Id.* at ¶ 8.  The plaintiff states that, based on his conviction, he is classified as a "drug offender within the meaning of the new rule."  *Id.* at ¶ 11.  He alleges the defendants applied the new rule to him "when the decision was rendered to deny him parole."  *Id.* at ¶ 9, 11.

The plaintiff claims that the subject rule was never "properly promulgated and enacted through the Laws of Chapter 227 of Wisconsin Statutes," *id.* at ¶ 10, and that the defendants did not notify him prior to his parole hearing that the rule would be considered in his application for an early release on parole.  *Id.* at ¶ 11.  The plaintiff also alleges that at the time of his conviction and sentence "no such rule or policy was in effect," and that he expected to be considered for an early parole release if he met other parole criteria.  *Id.* at ¶ 12.  However, under the new rule, the plaintiff alleges that he would not be released on early parole regardless of his satisfaction of other factors.  *Id.* at ¶ 13.

Administrative appeal of the denial of parole is not provided.  *Id.* at ¶ 7.  The plaintiff states there is no adequate state law remedy available to address his claims.  *Id.* at ¶¶ 7, 15.  However, the plaintiff could and did in fact seek state court certiorari review of the parole decision.  (Affidavit of Karla Z. Keckhaver [Keckhaver Aff.] ¶ 4, Ex. 102).  The plaintiff filed a petition for writ of certiorari on May 31, 2001.  *Id.*  However, Judge Atkinson dismissed the action concluding the plaintiff commenced the action beyond the six-month common-law latches

period.  *Id.*  The reviewing court also determined that neither the plaintiff's request for reconsideration nor Ms. Vande Kolke's letter to the plaintiff, *see* Complaint, Ex. F., extended the time limit.  (Keckhaver Aff. ¶ 4, Ex. 102).

The plaintiff claims that there is no rational basis for the disparate treatment of drug offenders and other offenders.  (Complaint at ¶ 14).  He alleges there is no adequate state law remedy available for addressing his procedural due process claims.  *Id.* at ¶ 15.  The plaintiff also claims that he has a protected liberty interest to be considered for discretionary parole and that the defendants infringed upon that liberty by applying an "ex post facto law."  *Id.* at ¶ 16.  He alleges he continues to be denied a "Timely and Fair hearing for possible release on parole."  *Id.* at ¶ 17.

# DISCUSSION

## I.    PRELIMINARY INJUNCTION

The plaintiff seeks an "<u>immediate Temporary Injunction</u> (T.R.O.) to injoin [sic] Defendants from applying the 'new no parole rule' and an <u>ORDER</u> for Defendants to show cause why this Injunction should not be permanently enforced throughout the course of this litigation within twenty (20) days of the Order."  (Complaint at 7) (emphasis in original).

The standards for a temporary restraining order and preliminary injunction are identical.  The applicant has the burden of showing:  (1) a reasonable

likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm if injunctive relief is denied. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). If the petitioner satisfies the initial three-step burden, the court must balance the irreparable harm to the nonmoving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. *Id.* The court also must consider the effect of the injunction on nonparties. *Id.*

For the reasons discussed fully in section II of this order, the plaintiff has failed to demonstrate his likelihood of success on the merits of any of his claims. Notably the parole commissioner's decision states on its face reasons for denying him parole other than application of the "new parole rule" challenged by the plaintiff. Thus, the order plaintiff seeks barring application of the "new rule" would not necessarily have any effect. Accordingly, the plaintiff has not established that he is entitled to a preliminary injunction and his request will be denied.

## II.    MOTION FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of a trial – the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Therefore, all inferences are taken in the light most favorable to the nonmoving party. *Matter of Wade*, 969 F.2d 241, 245 (7th Cir. 1992).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . .."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a

Case 2:03-cv-00764-JPS   Filed 07/27/05   Page 9 of 23   Document 38

sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added). In such a situation, there can be no "genuine issue of material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 849 (7th Cir. 1992); Fed. R. Civ. P. 56 (e)). Thus, in ruling on a motion for summary judgment, a "'court may consider any material that would be admissible at trial,' including properly authenticated and admissible documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (additional citations omitted)).

An affidavit submitted to support or oppose a summary judgment motion must be based on personal knowledge, must set forth facts that would be admissible at time of trial and must establish the affiant's competence to testify. Fed. R. Civ. P. 56(e). Affidavits based on "information and belief"–facts that the affiant believes are true, but which the affiant does not know are true–are not

proper.  *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162-63 (7th Cir. 1987).

Similarly, any portion of an affidavit based on hearsay does not meet the

admissibility requirements of Rule 56(e).

The defendants advance several arguments in support of summary

judgment.  They contend that the plaintiff's case should be dismissed because he

failed to first prevail on certiorari review before bringing his § 1983 action.

(Defendants' Brief at 9-12).  The defendants alternatively argue that the case

should be dismissed because the plaintiff has failed to allege a constitutional

violation.  *Id.* at 13-20.  In addition, they argue that the plaintiff has not plead

causation to an injury, that the complaint lacks allegations of the defendants'

personal involvement, and that the defendants are entitled to absolute quasi-

judicial immunity for their alleged involvement in denying the plaintiff parole.  *Id.*

at 20-23.  Finally, the defendants assert that any state law claims raised by the

plaintiff are barred by his failure to comply with the Wisconsin notice of claim

statute.  *Id.* at 23-24.

A.  Due Process Claims

As noted by the defendants, a challenge to the fact or duration of

confinement may not be pursued in a § 1983 action for damages, if success in the

§ 1983 action would necessarily imply the invalidity of the conviction or sentence,

unless the prisoner has first his conviction or sentence invalidated by a state

tribunal or through a federal habeas corpus action. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court emphasized the importance of the term "necessarily" to understanding which § 1983 actions are *Heck* barred. *Nelson v. Campbell*, 541 U.S. 637, 646-47 (2004). More recently, the Court has specified that § 1983 actions seeking declaratory or injunctive relief and challenging state parole procedure may proceed and need not be exclusively brought in federal habeas actions. *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1244-45 (2005).

The Court considered the cases of two Ohio prisoners and determined that they could proceed, one deemed ineligible for parole and the other deemed unsuitable for parole, who challenged the procedures used in reaching parole determinations and sought declaratory and injunctive relief. *Wilkinson*, 125 S. Ct. at 1244-46. The Court stated that success in their respective § 1983 actions would result in a new parole eligibility hearing for the former prisoner, "which at most [would] speed *consideration* of a new parole application," and a new parole hearing for the latter prisoner, "at which [state] parole authorities may, in their discretion, decline to shorten his prison term." *Id.* at 1248. Like the *Wilkinson* plaintiffs, here the plaintiff does not seek immediate or speedier release from prison, but rather declaratory and injunctive relief which, at most, would result in a new parole hearing at which state parole officials could determine not to shorten the plaintiff's sentence. Thus, the plaintiff's claims are not *Heck* barred. *Id.*

The defendants argue that the plaintiff states no due process claim because he does not have a protected liberty interest in discretionary parole. Under Wisconsin's discretionary parole scheme, "the Parole Commission *may* parole an inmate." Wis. Stat. § 304.06(1)(b) (emphasis added). Absent mandatory language, "Wisconsin's discretionary parole scheme does not create a liberty interest in parole." *Grendich v. Litscher*, 632 N.W.2d 878, 822 (Wis. Ct. App. 2001). As he must, the plaintiff concedes that he has no protected liberty interest in receiving discretionary parole. (Plaintiff's Response Brief at 9).

Nonetheless, the plaintiff asserts that he has a protected liberty interest in receiving a parole hearing at which "certain criteria 'shall' be considered." *Id.* He further contends that the "new rule" directing that these criteria be disregarded and early parole denied regardless of circumstances violates the plaintiff's procedural and substantive due process rights. *Id.* A review of the cases cited by the plaintiff reveals no support for his position that he has a due process right in process itself. Only when a liberty or property interest has been implicated does the court look to what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996) (citing *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.

1996)).  There is no liberty or property interest at stake, and thus the plaintiff fails to state a due process claim.[2]  His claim will be dismissed.

## B.  Equal Protection Claim

The defendants contend that the plaintiff has not stated a valid equal protection claim  because, for the purposes of parole, he is not similarly situated to other prisoners.  To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  In equal protection analysis, the level of scrutiny the court applies to a government action varies depending upon whether the plaintiff is a member of a suspect class, or whether a fundamental right is at stake.  *Id.*  Prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny.  *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990).

---

[2] The court additionally notes that, even if a protected interest were at stake, the plaintiff has received all the process that was due.  He received a hearing which appears to have comported with the requirements of *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 15 (1979) and *Solomon v. Elsea*, 676 F.2d 282, 286 (7th Cir. 1982), by setting forth the reasons for denying discretionary parole with sufficient clarity to permit a reviewing authority to determine whether parole was denied on impermissible grounds.  *See* Complaint ¶ 2, Ex. B.  If, as the plaintiff asserts, the defendants failed to consider mandatory criteria, this "random and unauthorized" conduct, *see Parratt v. Taylor*, 541 U.S. 527, 540 (1981); *Hamlin*, 95 F.3d at 583, could have remedied by seeking timely post-deprivation state *certiorari* review.  *Coleman v. Percy*, 292 N.W.2d 615, 621 (Wis. 1980).

Case 2:03-cv-00764-JPS   Filed 07/27/05   Page 14 of 23   Document 38

However, the plaintiff's equal protection is properly characterized as a "class of one" claim. "Class of one" equal protection claims arise without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The United States Court of Appeals for the Seventh Circuit has:

> recognized on several occasions that "[a] class of one equal protection claim may be brought where (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). *See also Olech*, 528 U.S. at 564; *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002); *but see Bell v. Dupperault*, 367 F.3d 703, 709-10 (7th Cir. 2004) (Posner, J., concurring); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (rejecting the "no rational basis" approach since "[i]f a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws.").

*Lunini v. Grayeb*, 395 F.3d 761, 768 (7th Cir. 2005).

The plaintiff alleges that, as a prisoner convicted of a drug-related offense, he was treated differently than prisoners convicted of non-drug-related offenses without a rational basis for the disparate treatment. (Complaint ¶ 14). As will be discussed at length in section II. C. of this order, the plaintiff has not established

that a "new rule" existed in 2000, or that the rule was applied to him in the denial of parole. Moreover, a valid consideration in denying parole is the seriousness of the prisoner's offense and the risk he poses to the public. Wis. Admin. Code § PAC 1.06(7). Thus, even if the plaintiff could establish that, as a drug-offender, he was treated differently than a non-drug-offender under the "new rule," this treatment would not lack a rational basis. The plaintiff's equal protection claim will be dismissed.

## C. Ex Post Facto Claim, Discovery Motions, Requested Extension, and Supplemental Pleadings

The defendants assert that the plaintiff does not state a valid *ex post facto* claim because they did not retroactively apply any law or rule such that the plaintiff's period of incarceration was necessarily extended. Article I, §10, of the Constitution restricts the states from passing any "ex post facto Law." *California Dep't of Corrs. v. Morales*, 514 U.S. 499, 504 (1995). The *ex post facto* clause forbids laws that alter the definition of crimes or increase the punishment for criminal acts retroactively. *Id.* at 504. To prevail on his *ex post facto* claim, the plaintiff would bear the burden at trial of demonstrating that the "new parole" rule existed and that the defendants applied the "new rule" to him in a manner that increased his punishment.

Prior to the court's conversion of the defendants' motion to one for summary judgment, the plaintiff filed a brief in opposition to the defendants' motion to dismiss. The court will first evaluate the pleadings and evidence which were before the court prior to the conversion of the motion.

The plaintiff states that in 1997, the Secretary of the Wisconsin Department of Corrections issued a "'new rule' directing the parole commission not to grant early parole to any and all drug offenders and [requiring] that they serve the entire mandatory maximum release date of their sentence." (Complaint ¶ 8). As evidence of the "new rule," the plaintiff attached to his complaint minutes of a State of Wisconsin Joint Committee on Finance meeting conducted September 26, 1996. (Complaint ¶ 8, Ex. G). According to these minutes, the "new rule" was to be effective "during 1996-97." (Complaint ¶ 8, Ex. G at 3).

The complaint states "upon information and belief" that the defendants applied the "new rule" to the plaintiff in denying him parole. (Complaint ¶ 9). The plaintiff's complaint, as previously noted, is unsworn. However, even if it were sworn, the plaintiff could not rely on statements made "upon information and belief" as affidavit evidence that the "new rule" was in fact applied to him. *Toro Co.,* 827 F.2d at 162-63. Further, the complaint exhibit states only that the "new rule" was effective "during 1996-97." (Complaint ¶ 8, Ex. G at 3). Thus,

there is no evidence that the "new rule" was in effect in 2000, at the time of the plaintiff's parole hearing, or that the "new rule" was applied to him.

Rather, the parole commissioner's decision, a copy of which is attached to the complaint, demonstrates that reasons other than application of the "new rule" were offered for denying the plaintiff parole. (Complaint ¶ 2, Ex. B). Namely, the commissioner found that the plaintiff had not served sufficient time in prison and posed an unreasonable risk to the community. *Id.*

On the basis of the evidence presented prior to the court's conversion of the defendants' motion, a reasonable jury could not conclude that the "new rule" existed in 2000, was applied to deny the plaintiff parole, or resulted in an increase to the plaintiff's punishment. However, in converting the defendants' motion, the court provided the parties with 90 days in which to submit additional pertinent materials. (September 16, 2004 Order). During that period, the plaintiff filed discovery-related motions, a request for an extension to respond to the defendants' motion, and "supplemental pleadings." The court will now evaluate these materials to determine their bearing on the plaintiff's *ex post facto* claim.

The plaintiff served the defendants with requests for production of documents on October 11, 2004.[3] (Plaintiff's Affidavit in Support of Motion to

---

[3] The plaintiff filed a copy of his request for production of documents with the court on October 14, 2004. Court records reveal that the document was docketed as a motion. However it is clear that the plaintiff sought no order of the court and the "motion" will be denied as moot.

Compel [Plaintiff's Aff.] ¶ 2). He asserts that his requests were stated as clearly as a *pro se* litigant possibly can, but that the defendants objected to responding to most of his document requests and interrogatories. (Plaintiff's Aff. ¶¶ 3-5). The plaintiff contends that his discovery requests are relevant to this suit and to defend against summary judgment. Id. at ¶ 6.

The court has reviewed the plaintiff's requests for document production, the defendants' objections, and the plaintiff's assertions of relevancy as to requests 1 through 8.[4] The court has also reviewed interrogatories numbered 1, and 4 through 14 served on defendant Franks.[5] In addition, the court has reviewed interrogatories numbered 1, and 4 through 14 served on defendant Williams.[6] Along with the interrogatories, the court has reviewed defendants Williams and Franks' responses and the plaintiff's statements of relevancy, reply brief and supplemental reply brief filed January 11, 2005.

Without a laboring discussion of the defendants' objections, the court notes that none of the plaintiff's disputed discovery requests are likely to produce admissible evidence relevant to the plaintiff's claims. *See* Fed. R. Civ. P. 26(b)(2).

---

[4] The plaintiff has "dropped" request number nine. (Motion to Compel Discovery/Interrogatories at 9).

[5] The plaintiff articulates no dispute as to defendant Franks' response to interrogatories numbered two and three.

[6] The plaintiff articulates no dispute as to defendant Williams' responses to interrogatories numbered two and three.

Specifically, if the defendants' were compelled to provide the requested information, to the extent they are so able, the plaintiff will not be able to demonstrate that a "new rule" was in effect in 2000, that the rule was applied to deny him parole, and that such an application of the rule resulted in his sentence being extended.

Moreover, the court notes that the plaintiff's motion to compel fails to comply with the conference requirement of Civil Local Rule 37.1 (E.D. Wis). Parties should attempt to resolve discovery disputes without court involvement. The statement required by Rule 37.1, serves to demonstrate to the court that sincere efforts to resolve the dispute were made, unsuccessfully, before the dispute was brought to court. For the foregoing reasons, the plaintiff's motion to compel discovery/interrogatories is denied.

The court notes that the plaintiff requested extension of time in which to respond to the defendants' summary judgment motion. His motion is largely based on his asserted need for discovery. (Motion for Extension ¶¶ 2, 4, 7, 10). The plaintiff has known the substance of the defendants' motion for almost a year-and-a-half. He was given 90 days to further oppose the defendants' converted motion. The plaintiff's discovery motions having been denied, his request for additional time cannot properly be granted and will be denied.

The plaintiff filed "Supplemental Pleadings" on June 1, 2005, which the court construes as a motion to amend the complaint. Pursuant to Fed. R. Civ. P. 15(a), amendments may be made at any time prior to the filing of a responsive pleading. The defendants have already answered the complaint and filed their dispositive motion. The plaintiff's motion to amend will be denied.

Notably, the plaintiff's proposed amended complaint contains no admissible evidence relating to whether the "new rule" was in effect in 2000, or whether such a rule was applied to the plaintiff in a manner extending his sentence. Thus, having addressed all of the plaintiff's submissions made after the conversion of the defendants' motion, the court concludes that the defendants are entitled to summary judgment on the plaintiff's *ex post facto* claim. The claim will be dismissed.

### D.    State Law Claims

The court does not read the complaint to include any state law claims, nor was the plaintiff permitted to proceed on any such claims. (October 10, 2003 Order). To the extent that the plaintiff asserts such claims, it is undisputed that the plaintiff did not satisfy the requirement that he plead compliance with the Wisconsin notice of claim statute, Wis. Stat. § 893.82. *Mannino v. Davenport*, 99 Wis. 2d 602, 611 (1981).

Based on and in light of the foregoing, the defendants' motion for summary judgment will be granted. The complaint and this action will be dismissed.

IT IS ORDERED that the plaintiff's request for a preliminary injunction (docket # 1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motion for production of records (docket # 28) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that the plaintiff's motion to compel discovery/interrogatories (docket # 30) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motion for an extension (docket # 32) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motion to amend the complaint (docket # 36) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (docket # 10) be and the same is hereby GRANTED.

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this __27th__ day of July, 2005.

BY THE COURT:

_s/ J. P. Stadtmueller_____
J. P. Stadtmueller
U.S. District Judge